METROPOLITAN LIFE INSURANCE COMPANY v. F. H. ALLEN AND WIFE, LOU REYNOLDS ALLEN, AND PETER FOSTER.

(Filed 20 March, 1935.)

**1. Betterments A a—Where relationship of mortgagor and mortgagee is terminated by foreclosure prior to claimant's possession under mesne conveyances from mortgagor, C. S., 710, does not apply.**

Where, at the time of claimant's going into possession under a deed purporting to convey the fee-simple title free from encumbrances, the deed of trust constituting a lien upon the lands, executed by claimant's predecessor in title, had been foreclosed and deed executed by the trustee to plaintiff, the mortgagee and purchaser at the foreclosure sale, claimant

is not precluded by C. S., 710, from filing his claim for betterments upon his ejectment by plaintiff, the relationship of mortgagor and mortgagee existing between plaintiff and claimant's predecessor in title having been terminated by the foreclosure sale and the trustee's deed prior to the time of claimant's taking possession, and therefore claimant not being included in the relationship of mortgagor and mortgagee.

**2. Betterments A b—Evidence held sufficient for jury on question of whether claimant of betterments was innocent third party.**

A judgment of nonsuit upon a petition for betterments is improperly entered on the ground that claimant was not an innocent third party in that it appeared that the deed of trust under which plaintiff claims as purchaser at the foreclosure sale was properly registered at the time deed was executed to claimant, where it appears that claimant's deed, regular upon its face, purported to convey the property in fee free from encumbrances and was supported by full consideration, and that claimant went into possession and made the improvements after foreclosure of the deed of trust under which plaintiff claims, and that at the time of the execution of the mortgage the mortgagor and mortgagee did not contemplate that the tract in question should be covered by the mortgage, and that claimant, at the time of purchasing the property, was advised by a reputable attorney that the title was free of encumbrances, and that claimant believed he had good title.

CIVIL ACTION, before *Grady, J.,* at February Term, 1934, of FRANKLIN.

The evidence tended to show that prior to 1 August, 1919, J. M. Allen and W. H. Allen were the owners of several tracts of land in Franklin County, and made an agreement to sell a certain portion thereof to E. T. Chaney. Chaney went into possession of the land and paid part of the purchase money, but received no deed. Thereafter, on 1 August, 1919, J. M. Allen and W. H. Allen borrowed $150,000 from the plaintiff, and as security for said loan executed and delivered to Charles H. Barron, trustee, a deed of trust covering twenty-nine separate tracts of land, including the land in controversy. This deed of trust was duly recorded on 2 August, 1919. Thereafter, on 11 March, 1922, the Allens conveyed approximately seventy-nine acres of land to E. T. Chaney for a recited consideration of $5,594.10. This deed was duly recorded on 25 March, 1922. On 1 December, 1922, Chaney executed a deed of trust on the land in controversy to the Southern Trust Company to secure a note for $1,500 to the land bank. This deed of trust was duly recorded on 22 December, 1922. The Allens paid approximately $60,000 on the Metropolitan loan, but were unable to complete the payments, and upon such default the trustee in the deed of trust securing the notes held by the plaintiff duly sold all of the land thereunder, at public auction, and the trustee in said deed of trust executed and delivered to the plaintiff a deed for all of the property, dated 28 September, 1926. At that time Chaney was in possession of the land in controversy and remained in possession until default was

made in the payment of his indebtedness to the land bank. By virtue of this default the Southern Trust Company, trustee for the land bank, sold the property in controversy and executed a deed to F. J. Beasley on 5 March, 1927. This deed was duly recorded on 16 April, 1927. Thereafter, on 27 July, 1927, Beasley and wife sold the land in controversy to the First National Bank of Louisburg and this deed was registered 28 July, 1927. Thereafter, the First National Bank of Louisburg, by deed dated 8 September, 1927, conveyed the land to F. H. Allen, the defendant, by deed recorded on 14 September, 1927. There was some uncertainty in the description of the original tracts of land included in the mortgage to the plaintiff, and there was evidence tending to show that W. H. Allen, at the time he executed the mortgage or deed of trust securing the indebtedness of the plaintiff, told the agent of plaintiff that the land in controversy was not to be included in the mortgage because "it was already sold to Mr. Chaney. . . . Chaney lived there for several years—five or six." The defendant F. H. Allen, after he went into possession under deed from the First National Bank of Louisburg, repaired the dwelling upon the land, built a kitchen and dining-room, a pack house, dug a pit, and repaired the stables and tobacco barn, and made other extensive and permanent improvements, expending for such purposes at least $800, and as a result of such improvements the value of the land had been enhanced in the sum of $1,000.

On 13 February, 1932, the plaintiff instituted an action of ejectment against the defendant, alleging that it was the owner of the land, and that the defendant was in the unlawful possession thereof. The defendant pleaded the statute of limitations, and at the February Term, 1933, upon the trial the jury answered the issue in favor of the plaintiff, and judgment was entered decreeing that the plaintiff was the owner of and entitled to the possession of the land in controversy.

Thereafter, in October, 1933, the defendant duly filed a petition for betterments. At the hearing of his petition he offered evidence of the chain of title and the value of improvements he had placed upon the land. He testified that he did not know that his land was included in the deed of trust to the plaintiff, and that the First National Bank, his grantor, was in possession at the time he purchased, and that E. T. Chaney had previously been in possession of the land for seven or eight years prior to that time. He further testified that W. H. Allen, the original owner of the land, had stated to him that the land was not included in the deed of trust to the plaintiff, "and I believed when I bought it that I was getting a good deed."

The plaintiff offered the testimony of Mr. G. M. Beam, a reputable attorney, who investigated the title of the land in controversy for the

land bank when the loan was made to Chaney, who said that he did not discover any encumbrances upon the land. This testimony was excluded by the court. However, the defendant testified without objection that the cashier of the First National Bank, the immediate grantor of defendant, told him that the attorney for the bank had examined the title, and that the title was "all right."

Mr. Beam further testified that the description in the deed from the Allens to Chaney was not the same as the description in the deed of trust from the Allens to the plaintiff, and the attorney stated: "I read them over carefully and I could not say that the conveyance in the Chaney deed was included in the Metropolitan deed of trust. It appeared to me that it was two separate descriptions," etc.

At the conclusion of all the evidence the petition of the defendants was dismissed, and they appealed.

*Jones & Brassfield for plaintiff.*
*Yarborough & Yarborough for defendants.*

BROGDEN, J. A. owns approximately nine thousand acres of land, and agrees to sell to B. a small tract containing about seventy-nine acres. B. enters into possession and makes a part payment on the purchase money, but receives no deed. Thereafter A. executes a deed of trust upon the entire body of land to secure a large indebtedness. About three years after the recording of said deed of trust A. conveys the seventy-nine-acre tract to B. by deed duly recorded. B. mortgages his seventy-nine-acre tract to secure an indebtedness, and being unable to pay, the land is duly sold under the mortgage and purchased by another. By *mesne* conveyances, duly executed and recorded, the title to the land was vested in the First National Bank of Louisburg, and said bank conveyed the same to the defendant by deed duly executed and recorded. A., the original owner of the land, did not pay his indebtedness secured by the deed of trust and sale was duly made thereunder, and the whole body of land purchased by the plaintiff. About six years after the land was purchased by the plaintiff it brought a suit in ejectment against the defendant and recovered possession. The defendant thereupon duly filed a petition for betterments and offered evidence tending to show that he had expended a substantial sum of money in making permanent improvements.

Upon the foregoing facts the following question of law arises:

Can the defendant maintain his petition for betterments?

The sale of the land under the original deed of trust, dated August, 1919, the purchase thereof by the plaintiff, and the deed from the trustee to the plaintiff dated 28 September, 1926, terminated the relationship

of mortgagor and mortgagee between the plaintiff and the original owners and mortgagors of the land. Hence, when the defendant went into possession in 1927 there was no such relationship existing between him and the plaintiff. Consequently, C. S., 710, does not apply.

The doctrine of betterments rests upon equitable principles and considerations of natural justice. That is to say, if the mortgagee becomes the purchaser of the mortgaged premises, he is entitled to receive the land in the same condition it was when he loaned the money for the manifest reason that he was satisfied with the security as it stood, otherwise, he would not have entered into the transaction. The law, however, declares that if improvements are put upon the mortgaged premises by the mortgagor or his assigns during the existence of the mortgage that by such act he is improving his own land, and such improvements strengthen the security and inure to the benefit of the mortgagee.

In the case at bar, however, the improvements were put upon the land after the termination of the mortgage relationship, and nothing else appearing, natural justice does not presume that a former mortgagee should be enriched by the labor and money of an innocent third party.

Obviously it must be determined whether the defendant was such innocent third party. A solution of this inquiry invokes a consideration of certain pertinent facts, to wit:

(a) The defendant was a purchaser for value of the land, and had a deed for it duly recorded, which deed was regular upon its face and purported to convey the land in fee.

(b) The defendant went into possession and made all the improvements claimed by him after the foreclosure of the deed of trust under which the plaintiff claims.

(c) Evidence was offered that it was not within contemplation of the original parties that the defendant's land should be included in the deed of trust.

(d) The defendant was advised at the time of the purchase that a reputable attorney had theretofore examined the title to the property and found no spot or blemish upon it.

(e) The defendant offered evidence that he had paid full value for the property.

(f) The defendant offered evidence that he had reason to believe, and did believe, that he had a good title.

The decisions in this jurisdiction shedding light upon the principles of law involved are *Hallyburton v. Slagle,* 132 N. C., 947, 44 S. E., 655; *Pritchard v. Williams,* 176 N. C., 108, 96 S. E., 733; *Eaton v. Doub,* 190 N. C., 14, 128 S. E., 494; *Layton v. Byrd,* 198 N. C., 466, 152 S. E., 161. While none of these cases are specifically in point, nevertheless they contain signboards marking out the highway along which the

. law travels in determining whether the defendant is entitled to better-
ments. The opinion in *Pritchard v. Williams, supra,* quoted with ap-
proval the following: "The good faith which will entitle to compensa-
tion for improvements has been defined to mean simply an honest belief
of the occupant in his right or title, and the fact that diligence might
have shown him that he had no title does not necessarily negative good
faith in his occupancy." The opinion proceeds: "There are many cases
where it has been held that although aware of an adverse claim, the
possessor may have reasonable and strong grounds to believe such claim
to be destitute of any just or legal foundation, and so be a possessor in
good faith, and as such entitled to compensation for improvements."
See, also, North Carolina Practice and Procedure, 860, *et seq.*

As the Court interprets the applicable decisions, it holds the opinion
that the defendant can maintain his petition, and, therefore, the judg-
ment of nonsuit was inadvertently entered.

Reversed.