LINDA H. (HALL) KNOTTS v. BENNY T. HALL; JAMES O. BUCHANAN,
    TRUSTEE; AND THE UNITED STATES OF AMERICA ACTING THROUGH
    FARMERS HOME ADMINISTRATION, U.S. DEPARTMENT OF AGRICULTURE

No. 8620SC954

(Filed 5 May 1987)

1. **Tenants in Common § 3— one tenant in possession—payment of property taxes
   —reimbursement proper**

    The trial court did not err in ordering reimbursement of defendant for
    payment of real property taxes on property owned jointly by the parties, and
    the court was not required to apply the exception, as argued by plaintiff, that
    a tenant who is in exclusive or sole possession of jointly-owned property is not
    entitled to reimbursement, since defendant's mere presence on the property
    did not amount to a *prima facie* showing of exclusive possession.

2. **Tenants in Common § 3— one tenant in possession of household goods—lien on
   goods—reimbursement for interest proper**

    There was no merit to plaintiff's contention that because defendant was in
    sole possession of the parties' household goods and furnishings, the trial court
    erred in ordering that he be reimbursed for interest payments on a lien on the
    household goods.

    Judge PHILLIPS dissenting.

APPEAL by petitioner from *Preston, Judge.* Judgment en-
tered 5 May 1986 in Superior Court, STANLY County. Heard in
the Court of Appeals 4 February 1987.

*David A. Chambers for petitioner-appellant.*

*Michael W. Taylor for respondent-appellee.*

BECTON, Judge.

Petitioner, Linda Knotts, brought this action seeking to parti-
tion real and personal property she owned jointly with her former
husband, respondent Benny Hall. The trial judge ordered a parti-
tion sale specifying that, from the sale proceeds, Hall be reim-
bursed for his payments of certain outstanding liens, mortgages
and taxes and that Knotts be reimbursed for tax payments she
made. Knotts appeals the reimbursement order. We affirm.

I

The following facts are not in dispute. Linda Knotts and Ben-
ny Hall purchased a house and lot in the Lakeside Heights sub-

division and some household goods and furnishings while they were married. During the marriage they mortgaged the Lakeside Heights real property to the United States through the Farmer's Home Administration (the FHA loan) to secure a debt of $19,500.00, and to Barclays-American Credit, Inc. (Barclays) to secure a debt of $7,600.74. They also encumbered their household goods and furnishings through a security agreement with Welcome Finance Company (Welcome Finance).

After Knotts and Hall divorced in 1983, Hall and the couple's son continued to live in the Lakeside Heights house, and Knotts and Hall co-owned the property as tenants in common. During this time Hall paid the following: FHA — $710.59 principal, $3,970.41 interest; Barclays — $6,883.40 principal, $2,556.89 interest; Stanly County real property taxes 1983-1985 — $453.35; and Welcome Finance — $64.66 principal, $539.55 interest.

In 1986 Knotts paid $103.38 for Stanly County real property taxes on the Lakeside Heights property.

The trial judge concluded that the properties were indivisible and ordered a partition sale. Additionally, the trial judge entered an order reimbursing both Knotts and Hall for the above expenditures from the sale proceeds.

Essentially, Knotts' several assignments of error can be lumped into the following four contentions: (1) Hall was in exclusive possession of the Lakeside Heights real property, thus he was not entitled to reimbursement for payments of interest on the FHA and Barclays mortgages, nor the Stanly County real property taxes (Knotts' assignments of error numbers I, II, III and VI); (2) Hall was in exclusive possession of the household goods and furnishings, thus he was not entitled to reimbursement for interest payments to Welcome Finance (Knotts' assignment of error number IV); (3) the trial judge's order did not properly weigh the equities in Knotts' favor (Knotts' assignment of error number VII); and (4) $453.00 of the reimbursement award was not supported by any evidence (Knotts' assignment of error number V).

Hall makes the following cross-assignments of error: (1) the trial court erred in admitting evidence regarding Hall's possession of the Lakeside Heights property; and (2) the trial court

erred in admitting evidence regarding the disbursement of funds obtained through the Barclay's loan before the parties divorced.

## II

We first consider Knotts' four contentions.

## A

[1] Knotts contends that the trial judge's order reimbursing Hall for payment of real property taxes was erroneous because the trial judge failed to apply an exception to the normal rule that a joint tenant is entitled to reimbursement at a partition sale. The exception, Knotts argues, provides that a tenant who is in *exclusive* or *sole possession* of jointly owned property is not entitled to reimbursement. Not only does Knotts argue that Hall was in exclusive possession of the Lakeside Heights property as a matter of law, but she also argues that the same exception should apply to interest on mortgage payments. (Knotts' assignments I, II, III and VI.) We will address these arguments in order.

N.C. Gen. Stat. Sec. 105-363 (1985) sets forth the general rule regarding reimbursement of cotenants who pay a disproportionate share of the real property taxes. That section allows a cotenant who pays a greater share of the "taxes, interest and costs" to enforce a lien in his favor upon the shares of the other joint owners "in a proceeding for actual partition, a proceeding for partition and sale, or by any other appropriate judicial proceeding." The statute itself contains no exceptions. However, its statutory predecessor, Revisal Sec. 2860 was held not to apply to a case in which one cotenant purchased the jointly held property at a tax sale by paying his cotenant's share of the taxes. *Smith v. Smith*, 150 N.C. 81, 63 S.E. 177 (1908). In *Smith* the North Carolina Supreme Court reasoned that the lien should not arise in a cotenant's favor when he was in "sole possession" of the property and "all of the cotenants [were not] on the same footing." Permitting the lien to arise in *Smith* would allow the cotenant in possession, who was already in the better position to know what actions were pending against the property, to purchase his cotenants' interest out from under them.

Knotts argues that the *Smith* exception requires that the cotenant in *sole* possession who pays all the taxes, is not entitled to reimbursement. We disagree. *Smith* only precludes the cotenant

from acquiring an interest superior to that of his cotenants when purchasing jointly owned property at a tax sale. *See Pearce v. Rowland*, 227 N.C. 590, 592, 42 S.E. 2d 683, 684 (1947); *Steel v. Trust Co.*, 223 N.C. 550, 553, 27 S.E. 2d 524, 527 (1943). At least one commentator has noted, however, that a cotenant in *exclusive* possession is not entitled to reimbursement for taxes paid during the time he held the property exclusively. *See* James A. Webster, Jr., Revised by Patrick Hetrick, *Webster's Real Estate Law in North Carolina*, Sec. 117 (1981). No evidence of exclusive possession was presented in the case *sub judice*.

The trial judge heard testimony concerning who was in possession of the property, but entered no findings on the issue of exclusive possession. Knotts testified that she had not lived at the property since 1983. She said Hall and their son lived there. She now maintains that the trial judge should have found that Hall was in exclusive possession as a matter of law.

Exclusive possession is not merely sole possession. Each cotenant is entitled to possess the entire property; therefore, Hall's mere presence on the property does not amount to a *prima facie* showing of exclusive possession. Consequently, the trial judge did not, and was not required to, make findings on that issue. We find that the trial judge properly ordered reimbursement under G.S. Sec. 105-363.

Knotts also argues that the exception denying reimbursement of tax payments to a cotenant in exclusive possession should be extended to payments of mortgage interest. Because we believe the issue of exclusive possession was not raised on the above facts, we offer no opinion whether a cotenant in exclusive possession is entitled to reimbursement of mortgage interest at a partition sale. Knotts' assignments of error numbered I, II, III and VI are overruled.

B

[2] Knotts next contends that the trial judge erred in ordering reimbursement for Hall's interest payments to Welcome Finance because Hall had exclusive possession of the household goods and furnishings. (Knotts' assignment of error number IV.) She cites no authority but argues that Hall's possession of the property compensated him for the interest payments. Therefore, since he was

in sole possession, he should shoulder the full responsibility for interest. We fail to see any reciprocal link between the interest payments and Hall's possession. Knotts and Hall were both entitled to full possession of the property and Hall's payment of the liens made the property available to both of them. Although this Court has held that possession has some value to a cotenant and has followed the long-standing rule that a cotenant in sole possession is not entitled to contribution for repairs or improvements (*see Craver v. Craver*, 41 N.C. App. 606, 255 S.E. 2d 253 (1979)), we see no compelling reason to extend that rule to include interest payments on outstanding liens. Again, Knotts appears to argue that sole possession is the equivalent of exclusive possession, and she has demonstrated only that Hall had sole possession. The record suggests no wrongdoing by Hall; he made no attempt to withhold the property from Knotts, and she made no demand for the property. There was no basis for a finding of exclusive possession in Hall. Knotts' assignment of error number IV is overruled.

### C

Knotts next contends that the trial judge erred in failing to consider in her favor the equities raised in her reply to Hall's request for reimbursement. (Knotts' assignment of error number VII.) Knotts' major objection is that, while she and Hall were married, she used the proceeds from the home loans to make improvements to the house. As noted in the previous section, a cotenant is not entitled to reimbursement for improvements. Furthermore, the trial judge was not required to take into account disbursements that were made before the tenancy in common actually came into existence. We find no indication that the trial judge failed to treat the parties fairly. Knotts' assignment of error number VII is overruled.

### D

Knotts lastly contends that the trial judge's legal conclusion number 7(e) which states that Hall is entitled to receive $453.00 for payment of real property taxes, is not supported by any evidence. (Knotts' assignment of error number V.) Apparently the trial judge attempted to correct a clerical error. In factual findings numbers 9, 10 and 12 the trial judge determined that Hall had paid a total of $14,574.64 on the two mortgages. But when the

judge entered legal conclusion number 7(c) he ordered reimbursement of only $14,121.64 which is $453.00 less than Hall had paid. Then in legal conclusion number 7(e) he made a separate order for $453.00. However, we granted leave to Hall to amend the record to reflect a single reimbursement of $14,574.64 from the real property proceeds. At any rate the clerical error was not prejudicial to Knotts.

Having affirmed the judgment of the trial court, we need not reach Hall's cross-assignments of error.

Judgment is affirmed.

Judge JOHNSON concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

In my opinion the trial judge erred in not finding that respondent was in exclusive possession of the property involved after the divorce and in giving him credit for the payments he made on the mortgage debts and property taxes while enjoying such possession. The uncontroverted facts are these: The Halls are divorced and after the decree was obtained Mrs. Hall became the wife of another man; the real property involved consists of a small three bedroom house that the Halls could not live harmoniously in while they were married; since the divorce respondent, along with the parties' grown son, has lived in the house continuously and petitioner has not lived in it or used the personal property at all. These salient facts are certainly evidence that respondent's possession of the house and personal property was exclusive; and in my view they lead to that conclusion as a matter of law. For the central purpose of our law is to promote civil order and domestic tranquility; the law of tenancy in common, no less than other law, is based on reason and experience; and it is contrary to all reason and human experience to suppose that an estranged and divorced couple, either by themselves or joined by the new spouse of one of them, can tranquilly occupy one little dwelling house and use its furnishings together. Under the circumstances respondent's possession was exclusive in both the practical and technical sense; and since his payments were ap-

parently less than the occupancy and use of the property were worth, the credit allowed him was contrary to both equity and law. There was also evidence, though disputed, that respondent had the locks on the doors to the house changed, striking proof, I would think if more were needed, of his exclusive possession.